The document below is hereby signed.

Signed: December 14, 2018



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| A V CAR & HOME, LLC, | ) | Case No. 18-00434 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WELCH FAMILY LIMITED | ) | |
| PARTNERSHIP FOUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 18-10013 |
| DAVID J. BROWN, *et al.*, | ) | |
| | ) | Not for publication in |
| Defendants. | ) | West's Bankruptcy Reporter. |

<u>MEMORANDUM DECISION AND ORDER GRANTING MOTION TO REMAND</u>

The debtor, A V Car & Home, LLC ("AV"), a defendant in this adversary proceeding, removed this adversary proceeding from the Superior Court of the District of Columbia where it was pending as a civil action (Case No. 2016-CA-004991 R(RP)).  The plaintiff, Welch Family Limited Partnership Four ("Welch Four"), has moved to remand the proceeding to the Superior Court.

Welch Four asserts that abstention of this court is required under 28 U.S.C. § 1334(c)(2), and that, alternatively, discretionary abstention is warranted under 28 U.S.C. § 1334(c)(1) and § 1452(b).

As the Superior Court noted in an order of October 4, 2017, the proceeding involves a thirty-inch walkway that is partially deeded to two adjacent properties, one owned by Welch Four and the other, located at 309 H Street NW, Washington, D.C. (the "Property"), owned by AV and David J. Brown, with each holding a 50% interest. Welch Four claims ownership of the entire walkway by reason of adverse possession or a prescriptive easement. Welch Family Limited Partnership Nine ("Welch Nine"), an entity related to Welch Four, holds a deed of trust against the Property. There appears to be no dispute that the Property has substantial equity in excess of Welch Nine's deed of trust claim.

I

MANDATORY ABSTENTION

AV concedes that the issues regarding mandatory abstention boil down to whether this is a core proceeding and whether the action can be timely adjudicated in the Superior Court.

A. Non-Core Nature of Proceeding

Under 28 U.S.C. § 1334(c)(2) mandatory abstention does not apply if a proceeding is a core proceeding. The action principally involves Welch Four's claim to ownership of part of

the Property by reason of adverse possession or a prescriptive easement, and the court must address whether that is a core proceeding.  For the following reasons, those claims are not a core proceeding.[1]  The claims are not claims against the estate, a matter that a bankruptcy judge plainly may hear and decide, via an objection to claim as a core proceeding, without running afoul of Article III of the Constitution.  Instead, the claims are claims of ownership of part of the Property as to which AV and claims ownership.  Although record title to the Property (including the portion in dispute) rests in AV and Brown, Welch Four's claims, if upheld, would result in the portion in dispute, as a matter of District of Columbia law, being Welch Four's, with that portion not being property of the estate.

One would think that adjudicating the extent of the estate's property rights goes to the core of a bankruptcy case.  "At its most basic level, bankruptcy is 'an adjudication of interests claimed in a *res*,'" *Wellness Intern. Network, Ltd. v. Sharif*, --- U.S. ----, 135 S.Ct. 1932, 1952, 191 L.Ed.2d 911 (2015) (Roberts,

---

[1]  Brown has asserted four counterclaims regarding his ownership interest.  The issue of Brown's ownership of the Property is no more a core proceeding than is the issue of AV's ownership of the Property.  Brown has asserted three other counterclaims under state law that plainly are not core proceedings.  In any event, Brown's counterclaims have no impact on AV's estate, and cannot form a basis for AV needing to have the proceeding remain here.  (Besides, as will be seen, Brown forfeited the right to have those counterclaims removed to this court in his own bankruptcy case by failing in his own bankruptcy case timely to remove the proceeding here.)

C.J. dissenting) (quoting *Katchen v. Landy*, 382 U.S. 323, 329, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)).  "Defining what constitutes the estate is the necessary starting point of every bankruptcy; a court cannot divide up the estate without first knowing what's in it."  *Id.*  Accordingly, "[i]dentifying property that constitutes the estate has long been a central feature of bankruptcy adjudication."  *Id.*  Indeed, under 28 U.S.C. § 157(b)(2)(A), "matters concerning the administration of the estate" are classified as core proceedings.  *See Marah Wood Prods., LLC v. Jones*, 534 B.R. 465, 474 (D. Conn. 2015) (noting that "proceedings in which the estate or the debtor seek to adjudicate their property rights in certain property constitute core proceedings, even if the adjudication of those rights is governed solely by state law.")

Regardless of how central a property ownership dispute like this may be to resolving a bankruptcy case, and thought of as going to the core of the case, this proceeding must be treated as a non-core proceeding.  Statutorily the proceeding may be a core proceeding, but that is not the end of the inquiry.

The classification of proceedings as core or non-core under 28 U.S.C. § 157(b)(2) was designed to address what claims a bankruptcy judge could decide without transgressing Article III of the Constitution.  The Supreme Court has held that Article III of the Constitution bars bankruptcy judges from deciding a

4

proceeding to determine ownership as a core proceeding if the
third party's claim to the property is not merely colorable (that
is, if the claim is a substantial adverse claim of ownership).
*See Sharif*, 135 S.Ct. at 1950 and 1953 (Roberts, C.J.
dissenting).  *See also Reed v. Nathan*, 558 B.R. 800, 816 (E.D.
Mich. 2016) (turnover proceeding is non-core if there is a bona
fide dispute or legitimate dispute as to ownership of the
property).

When a proceeding that is statutorily a core proceeding
under 28 U.S.C. § 157(b)(2) but under Article III of the
Constitution may not be heard by the bankruptcy judge,
§ 157(b)(2) is unconstitutional in regard to treating the
particular proceeding as a core proceeding that the bankruptcy
judge may hear and decide.  *See Executive Benefits Insurance
Agency v. Arkison*, 573 U.S. 25 (2014).  In that event, the
bankruptcy judge may only treat the proceeding as a non-core
proceeding.  *Id.*

AV has not contended that Welch Four's claim of ownership is
merely colorable.  Accordingly, by reason of the Supreme Court's
Article III jurisprudence regarding whether a claim to ownership
of property can be treated as a core proceeding that the
bankruptcy judge may hear and decide, I conclude that Welch
Four's claim in this proceeding must be treated as a non-core
proceeding.  The other claims in the proceeding are plainly

statutorily non-core or would have to be treated as such under
Article III jurisprudence.  Accordingly, this proceeding in its
entirety is treated as a non-core proceeding.

B.

The remaining issue with respect to mandatory abstention is
whether the proceeding can be timely adjudicated by the Superior
Court.  As held in *Power Plant Entm't Casino Resort Ind., LLC v.
Mangano*, 484 B.R. 290, 298-99 (Bankr. D. Md. 2012), the burden on
the timeliness issue is more appropriately placed on the party
opposing abstention.  *See also Parmalat Capital Fin. Ltd. v. Bank
of Am. Corp.*, 639 F.3d 572, 582 (2d Cir. 2011); *In re AOG Entm't,
Inc.*, 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017) (holding that
courts since *Parmalat* have placed the burden of proof on the
party opposing remand*); Commonwealth of Va. ex rel. Integra Rec
LLC v. Countrywide Sec. Corp.*, 2015 WL 3540473, at *6 (E.D. Va.
June 3, 2015).  AV has failed to demonstrate that the matter
cannot be timely adjudicated in the Superior Court.  Even if the
burden of proof regarding this issue is on Welch Four, Welch Four
has shown that the matter can be timely adjudicated in the
Superior Court.

> Four factors come into play in evaluating § 1334(c)(2)
> timeliness: (1) the backlog of the state court's calendar
> relative to the federal court's calendar; (2) the
> complexity of the issues presented and the respective
> expertise of each forum; (3) the status of the title 11
> bankruptcy proceeding to which the state law claims are
> related; and (4) whether the state court proceeding would

6

prolong the administration or liquidation of the estate.
*See In re Georgou*, 157 B.R. 847, 851 (N.D. Ill. 1993).

*Parmalat*, 639 F.3d at 580.  As held in another decision, factors

to consider are:

> (1) backlog of the state court and federal court
> calendar; (2) status of the proceeding in state court
> prior to being removed (i.e., whether discovery had
> been commenced); (3) status of the bankruptcy case; (4)
> the complexity of the issues to be resolved; (5)
> whether the parties consent to the bankruptcy court
> entering judgment in the non-core case; (6) whether a
> jury demand has been made; and (7) whether the
> underlying bankruptcy case is a reorganization or
> liquidation case.

*Personette v. Midgard Corp. (In re Midgard Corp.*), 204 B.R. 764,

779 (10th Cir. B.A.P. 1997)).

As to the backlog factor, it is important to review the

history of the proceeding.  The proceeding has faced substantial

delays, but the procedural history of the proceeding shows that

the intervention of Brown's and AV's bankruptcy cases, and AV's

initial inattention to the proceeding have caused the proceeding

to move in fits and starts, and that the substantial delay cannot

be attributed to any backlog in the Superior Court's calendar.

The proceeding began as a civil action in the Superior Court

on July 11, 2016, via Welch Four's filing its complaint against

AV and Brown.  Welch Four has noted that on July 11, 2016, it

mailed copies to Brown and to Brown as the registered agent of

AV.  On August 15, 2016, Brown filed a document titled *Answer and*

*Counterclaim, and Emergency Stay of Foreclosure*, without awaiting

7

personal service of a summons.  On August 19, 2016, the Superior
Court denied that document's request for a stay of foreclosure.

On September 8, 2016, Brown, acting without counsel, filed a
voluntary petition in this court, Case No. 16-00466, commencing a
case under Chapter 11 of the Bankruptcy Code, with Brown serving
as a debtor in possession exercising the powers of a trustee
(including the right to defend against Welch Four's complaint).
On November 2, 2016, this court granted relief from the automatic
stay of 11 U.S.C. § 362(a) in Brown's case to permit Welch Four
to pursue its complaint in the Superior Court.  On December 15,
2016, Welch Four made personal service on Brown and on Brown as
the personal representative of AV.  On December 16, 2016, Welch
Four filed a praecipe in the Superior Court advising it that the
automatic stay had been lifted.  On January 6, 2017, the Superior
Court held a status conference and set a deadline for completing
discovery of May 22, 2017.

Brown was proceeding pro se, and raised an issue at the
status conference of January 6, 2017, regarding whether AV had
been properly served but at that juncture no attorney entered an
appearance for AV.  On January 6, 2017, Brown filed a confusing
document titled *Motion for Dismissal for Lack of Jurisdiction, or
Alternative Summary Judgement, Answer and Counterclaim,
Crossclaim and Setoff, Amended*.  On January 9, 2017, the Superior
Court issued a notice setting a status conference for February
10, 2017.

On January 11, 2017, this court converted Brown's bankruptcy case to a case under Chapter 7 of the Bankruptcy Code, and Bryan Ross became the trustee in that case with standing (in place of Brown) to protect the bankruptcy estate in Brown's case, including defending against Welch Four's claim against Brown's interest in the Property.

On February 6, 2017, Welch Four filed a motion to file an amended complaint to add, as part of the Property as to which it claimed ownership, air space above the walkway, the walkway already identified as the subject of its initial complaint, and for permission, if necessary, to serve AV by publication because Brown had raised the issue at the status conference regarding whether AV had been properly served.  The docket entry for the status hearing of February 10, 2017, recites:

> Result: Status Hearing Held. CourtSmart. All parties present. Pltf. Emergency written Motion to Permit Reattachment of Gate is Denied.  Plaintiff's Oral Motion on 1/6/17 to Extend Time to Serve Nun Pro Tunc Within the 60 day Period is Denied without prejudice. Pltf. written Motion For Enlargement Of Time (1) To Respond To Defendant's Motion For Dismissal For Lack Of Jurisdiction, or Alternative Summary Judgment, Answer And Counterclaim, Crossclaim And Setoff, Amended and (2) To Address Service Of Process is Granted.  Deft. to file response to motion to dismiss by 2/15/17.  Pltf. intends to file motion for TRO within the next week. Motion hearing set for 2/28/17 @ 10:00 a.m.

On February 13, 2017, Welch Four filed a motion for a preliminary injunction regarding restoring a security gate to the walkway. The docket entry for the status conference of February 28, 2017, recites:

9

Result: Motion Hearing Held. CourtSmart.  All parties
present.  Testimony of David Brown and Kenneth Welch
taken.  Motion hearing set for 3/14/17 @ 10:00 a.m.

By consent, that hearing was continued to April 27, 2017.  On

April 26, 2017, based on notice to the Superior Court judge's

chambers that Welch Four was withdrawing its motion for

preliminary injunction, the Superior Court canceled the hearing

and treated the motion for a preliminary injunction as withdrawn.

Meanwhile, on April 24, 2017, counsel entered an appearance for

Brown.  On May 1, 2017, that counsel filed a motion for leave to

file an amended answer and counterclaim.  On May 30, 2017, the

Superior Court set mediation for July 20, 2017.

There was an issue of whether Ross, the bankruptcy trustee

in Brown's bankruptcy case, needed to be added as a party, an

issue Welch Four addressed on August 21, 2017, by filing a

further motion for leave to amend the complaint.  On October 4,

2017, the Superior Court issued an order addressing Welch Four's

two motions for leave to amend the complaint and (1) permitting

the filing of an amended complaint as requested (except that the

request to add "All Persons Known and Unknown Claiming in

Interests" in the Property was denied), (2) treating service on

AV as timely, (3) finding that AV had been properly served, and

(4) directing AV to file an answer by October 25, 2017, unless it

challenged service for any reason other than timeliness.  AV did

not challenge service on it, and no answer was timely filed.  Not

until November 13, 2017, did AV file a motion to file an answer out of time.  That motion has never been decided.  Not until June 20, 2018, did AV commence a bankruptcy case to attempt to invoke rights under the Bankruptcy Code to deal with its ownership interest in the Property (and Welch Nine's claims against the Property).

Also on October 4, 2017, the Superior Court issued an order addressing (1) Brown's *Motion for Dismissal for Lack of Jurisdiction, or Alternative Summary Judgment, Answer and Counterclaim, Crossclaim and Setoff, Amended*,(2) Plaintiff's *Motion to Dismiss Defendant Brown's Counterclaim*, filed January 23, 2017, and (3) Brown's *Motion for Leave to File an Amended Answer*, filed May 5, 2017.  The Superior Court denied Brown's motion to dismiss, and in doing so addressed an issue under District of Columbia law regarding the effect of the transfer of a 50% ownership interest to AV less than 15 years ago (an adverse possession claim being unsuccessful under District of Columbia law if the adverse possession has not been for at least 15 years).  The Superior Court noted defects in Brown's proposed amended answer and counterclaim but granted Brown's *Motion for Leave to File an Amended Answer* in part by granting him leave to file an Amended Answer and Counterclaim (responding to Welch Four's August 21, 2017 Amended Complaint) by October 18, 2017.

On October 4, 2017, AV filed its Amended Complaint but (consistent with the Superior Court's first order of October 4, 2017) without "All Persons Known and Unknown Claiming in Interests" in the Property being added as defendants.  On October 17, 2017, in response thereto, Brown filed a *Second Amended Answer, Counterclaim and Jury Demand*.  On October 25, 2017, the clerk of the Superior Court issued a summons for service on Ross, and service was made on October 31, 2017.

On November 2, 2017, Welch Four filed a motion for entry of an order of default against AV based on AV's failure to file an answer by October 25, 2017.  Not because of any lengthy delay on the part of the Superior Court, a hearing has not yet been held on that motion.

On November 7, 2017, Welch Four filed a motion to strike Brown's *Second Amended Answer, Counterclaim and Jury Demand*, noting that Ross now had exclusive standing to assert claims belonging to Brown and to defend against Welch Four's claims. Not because of any lengthy delay on the part of the Superior Court, a hearing has not yet been held on that motion.

On November 13, 2017, AV filed a motion for an enlargement of time to file an answer.  Not because of any lengthy delay on the part of the Superior Court, a hearing has not yet been held on that motion.

On November 16, 2017, Ross, as the trustee in Brown's bankruptcy case, removed the proceeding to this court where it

was assigned Adversary Proceeding No. 17-10032.  Not until
February 16, 2018, did Ross file an answer (in Adversary
Proceeding No. 17-10032, prior to the remand of the proceeding).
Ross's answer did not assert any of the counterclaims that Brown
had asserted.  This court determined that removal had been
untimely and remanded the proceeding to the Superior Court on
April 17, 2018.

Upon receiving the remanded proceeding, the Superior Court
set a status hearing for July 13, 2018.  However, on June 20,
2018, AV filed a voluntary petition under chapter 11 of the
Bankruptcy Code commencing its bankruptcy case, and on June 22,
2018, AV filed its notice of removal, removing the Superior Court
action to this court.

AV contends that there is a "well-known" backlog in D.C.
Superior Court; however, AV provided no evidence of such a
backlog, and no evidence with which to compare that court's speed
in disposing of civil actions versus this court's speed in
disposing of adversary proceedings.  The tortured procedural
history of the proceeding, attributable to acts of the parties
and not attributable in any significant part to the Superior
Court's handling of the proceeding, demonstrates that the
Superior Court has not been handling the proceeding with
unreasonable delay.  Moreover, because this is a non-core
proceeding and Welch Four has not consented to this court's
deciding the claims in this proceeding, 28 U.S.C. § 157(c)

13

requires that this court could only make proposed findings of
fact and conclusions of law under Fed. R. Bankr. P. 9033 for
review, de novo, by the District Court.  (AV has not filed a
motion to withdraw the reference of this proceeding to the
bankruptcy court even though the proceeding has been pending here
for months, and there is no assurance that the District Court
would withdraw the reference.)   The Superior Court, in contrast,
would be able to enter a final judgment regarding the claims.
Even though this court's docket may be lighter than the Superior
Court's, the non-core character of the proceeding results in
there being no likelihood that the dispute could be decided more
quickly under the procedures of Fed. R. Bankr. P. 9033 than in
the Superior Court.  *See In re Cooper*, No. 16-10345, 2016 WL
3564409, at *3 (Bankr. D. Kan. June 22, 2016) ("Even if we tried
this proceeding here, the bankruptcy court would still have to
submit its proposed findings of fact and conclusions of the law
to the district court for review and entry of judgment, adding a
further layer of review and, of course, more delay."); *In re
Midgard Corp.*, 204 B.R. at 778 n.17; *In re Talisman Marina, Inc.*,
385 B.R. 338, 342 (Bankr. M.D. Fla. 2008).

As to the second factor (the complexity of the issues
presented and the respective expertise of each forum) the
Superior Court has greater familiarity with the proceeding than
this court.  The proceeding already has a long procedural history
in the Superior Court, and the Superior Court has already heard

14

substantive issues in the proceeding.  Still pending are a motion
for entry of a default order against AV and a motion to grant AV
an enlargement of time to file an answer.  The Superior Court is
best familiar with what transpired with respect to the long
procedural history of the action; it set the deadline for AV to
answer the complaint; and it is thus best positioned to decide
whether it would be appropriate to allow AV to file a belated
answer.  Moreover, it already devoted attention to the merits of
the action when it addressed Brown's motion to dismiss and when
it heard testimony of two witnesses regarding the motion for a
preliminary injunction.

As to the third factor (the status of the title 11
bankruptcy proceeding to which the state law claims are related),
and the fourth factor (whether the state court proceeding would
prolong the administration or liquidation of the estate), AV has
filed a proposed liquidating plan which provides:

> The Debtor will request that the Confirmation Order will
> authorize it to sell the Property free and clear of all
> other interests pursuant to 11 U.S.C. § 363(h), and free
> and clear of liens and interests pursuant to 11 U.S.C. §
> 363(f), including all claims asserted by Welch Four in
> the Adverse Possession Case.
>
> If the Court does not authorize the Debtor to sell the
> Property free and clear of the claims asserted by Welch
> Four in the Adverse Possession Case, the Debtor will
> continue the adjudication of the Adverse Possession Case,
> and file a motion to sell free and clear of liens and
> interests upon the conclusion of the Adverse Possession
> Case.
>
> In the event the Court authorizes the sale of the
> Property free and clear of the claims asserted by Welch

15

> Four in the Adverse Possession Case, the Debtor will pay
> to Welch Four the monetary value of the claims it asserts
> in the Adverse Possession Case, in an amount to be
> determined by the Court, after notice and a hearing.

*Debtor's Plan of Liquidation* (Case No. 18-00434, Dkt. No. 68) at

15. The plan does not hinge on first obtaining an adjudication

of this adversary proceeding. Because the plan is a liquidating

plan, there is no apparent urgency in adjudicating Welch Four's

claims insofar as moving towards a confirmed plan is concerned:

such an adjudication and any sale of the Property could occur

after a plan is confirmed. Achieving a sale under a confirmed

plan (or before confirmation of a plan) might be delayed by any

delay in adjudicating Welch Four's claims, but despite such a

delay creditors (and the debtor's member) will realize precisely

those nonbankruptcy law entitlements that they would outside of

bankruptcy.

In Brown's bankruptcy case, Ross has filed a complaint

commencing an adversary proceeding (Adversary Proceeding No. 18-

10026) in which he alleges:

> To stem costly litigation and avoid the risk of the
> diminution in the value of the Property caused by the
> Adverse Possession Case, the Trustee has entered into an
> agreement with Welch Four and Welch Nine under which the
> Trustee will seek authority to sell the Property to Welch
> Four pursuant to 11 U.S.C. § 363(h) for $1,975,000.00.

Compl. ¶ 31. Ross's complaint seeks to sell the Property free

and clear of AV's and Brown's interests in the Property to Welch

Four pursuant to a sale for $1,975,000. If Ross's complaint

succeeds, that would moot the claims Welch Four has asserted in

this adversary proceeding, and the AV and Brown estates would
share the net proceeds 50% each.

However, AV has filed a counterclaim in Adversary Proceeding
No. 18-10026 alleging that AV now has an offer from Taja
Investments, LLC to purchase the Property for $2.3 million, as
long as AV can convey free and clear title (including free and
clear of Welch Four's claims asserted in this adversary
proceeding to part of the Property ).  AV's counterclaim seeks to
sell the Property free and clear of Welch Four's claims to part
of the Property.  However, Welch Four's asserted interest in part
of the Property pursuant to its adverse possession and
prescriptive easement claims would still have to be litigated in
order to determine whether Welch Four is entitled to part of the
proceeds of any sale free and clear of Welch Four's asserted
interest in the Property.  AV has argued that if Welch Four's
claims are decided promptly, and if AV prevails in defeating
those claims, the prompt resolution will assist AV in its Chapter
11 case because it would be able to sell the Property to Taja
Investments, LLC without the delay that it believes will occur in
the Superior Court.  However, AV recognizes via its plan and via
its counterclaim in Adversary Proceeding No. 18-10026 that any
sale must be of both Brown's 50% interest and AV's 50% interest,
and, moreover, that AV can attempt to achieve a confirmed plan
without first obtaining an adjudication of this adversary
proceeding.  If Welch Four's claims are without merit, that can

17

be adjudicated in due course, and the AV estate will realize whatever is the value of the Property without that value being reduced by Welch Four's claims.

AV might be able more quickly to achieve a sale to Taja Investments, LLC by obtaining a prompt dismissal of Welch Four's claims (if those claims are without merit), and that might permit a quicker resolution of AV's bankruptcy case.  Although the Superior Court may not be as attuned as this court to the impact of the proceeding on the bankruptcy case, AV will be able to explain to the Superior Court any urgent need for a prompt adjudication of this proceeding in order to facilitate a sale to Taja Investments, LLC.  To understand that will not require an intimate knowledge of bankruptcy law or regarding the status of AV's bankruptcy case.  True, AV's interest in the Property constitutes a single asset real estate to which 11 U.S.C. § 362(d)(3) applies.  However, AV has filed a plan which does not require that the Property be sold before the plan is confirmed, and under § 362(d)(3)(A), whether the plan "has a reasonable prospect of being confirmed within a reasonable time" does not appear to be meaningfully impacted by whether this proceeding is tried here or in the Superior Court.

C.

For all of the foregoing reasons, I conclude that mandatory abstention applies.

III

18

The foregoing analysis also weighs in favor of permissive abstention.  Section 1334(c)(1), which authorizes permissive abstention, states that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." When reviewing whether abstention is appropriate under Section 1334(c)(1), courts evaluate the following factors:

(a) efficiency in the administration of the debtor's estate;

(b) the extent to which state law issues predominate over bankruptcy issues;

(c) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;

(d) the presence of a related proceeding commenced in state court;

(e) the existence of a jurisdictional basis other than § 1334;

(f) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(g) the substance rather than form of an asserted "core" proceeding;

(h) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(i) the burden of the federal court's docket;

(j) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

19

(k) the existence of a right to a jury trial; and

(l) whether non-debtor parties are involved in the proceeding.

*Mangano*, 484 B.R. at 299.  Courts also consider factors such as (1) the efficient use of judicial resources; (2) the possibility of inconsistent results; (3) the expertise of the court where the action originated; and (4) duplicative and uneconomic effort of judicial resources in two forums.  *See Mangano*, 484 B.R. at 301; *Patterson v. Morris*, 337 B.R. 82, 96-97 (E.D. La. 2006).

Jurisdiction in the District Court could only rest on 28 U.S.C. § 1334.  The claims are state law claims with which the Superior Court already has familiarity, and retaining the proceeding here would subject the proceeding to the delay inherent in the cumbersome procedures of Fed. R. Bankr. P. 9033. None of the enumerated factors persuade me that abstention is unwarranted.

Moreover, AV, the party urging that the need for a prompt disposition weighs against abstention, has engaged in delay by failing timely to file an answer by October 25, 2017, and by failing until June 20, 2018, to commence a bankruptcy case to attempt to invoke rights under the Bankruptcy Code to deal with its ownership interest in the Property (and Welch Nine's claims against the Property).  That weighs in favor of discretionary abstention under 28 U.S.C. § 1452(b) which authorizes remand "on any equitable ground."

20

IV

For all of these reasons, it is

ORDERED that *Welch Family Limited Partnership Four's Motion for Remand and Abstention* is GRANTED, and this proceeding is remanded to the Superior Court of the District of Columbia.

[Signed and dated above.]

Copies to: Debtor; all counsel of record.